UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LINDA G. BRYANT, et al., :
      Plaintiffs : Civil Action No.
       :
v. :
       :
WILLIAM VERNOSKI, : 11-263
      Defendant :

MEMORANDUM

**Stengel, J.**                                                                       September 1, 2011

Linta G. Bryant, Nikita Reid, individually and on behalf of her minor son J.B., and Shawn Reid have filed an amended complaint alleging federal and state law claims against William Vernouski,[1] Fred Lamke,[2] and Jane Doe. The claims arise from the shooting death of the Reid family's pet dog during the execution of a bench warrant for Ms. Reid's ex-husband, who no longer lived at the property. Dauphin County Deputy Sheriff William Vernouski filed a motion to dismiss the amended complaint. For the reasons set forth below, I will grant the motion in part and deny it in part.

I.     Background

Linta G. Bryant, Nikita Reid, Shawn Reid, and Ms. Reid's son J.B. filed a complaint on February 7, 2011 against Dauphin County Deputy Sheriff William Vernouski. On May 11, 2011, plaintiffs filed an amended complaint against Deputy Vernouski, Fred Lamke, and Jane Doe. Deputy Vernouski filed a motion to dismiss the amended

---

[1] The amended complaint incorrectly referred to the defendant as "William Vernoski."
[2] The amended complaint incorrectly referred to the defendant as "Fred Lanke."

complaint.[3]

The amended complaint alleges Ms. Bryant owned property at 906 S. 17th Street in Harrisburg, Pennsylvania. Ms. Reid, J.B., and Mr. Reid resided at the property. The Reid family had a pet dog named Bandit.

On May 12, 2009, Deputy Sheriff R.L. Straining and Deputy Vernouski knocked on the door of 906 S. 17th Street. The deputies were there pursuant to a bench warrant for Ms. Reid's ex-husband. The bench warrant listed Ms. Reid's ex-husband's address as the 17th Street address, but the amended complaint alleges he had not resided there since 2002.[4] Ms. Reid and J.B. were home and Ms. Reid asked Deputy Straining to wait while she put Bandit into the fenced-in back yard.

While Ms. Reid spoke with Deputy Straining, Deputy Vernouski went to the back of the house. Bandit was at the foot of the backyard steps and barked at Deputy Vernouski when he entered the yard. After twice telling Bandit not to bark, Deputy Vernouski shot Bandit, who was ten feet away. J.B. witnessed the shooting. After Bandit was taken to the veterinarian, he was put down.

Ms. Reid told her co-worker about the incident. Her co-worker emailed Dauphin County Commissioner George Hartwick to advise him of the situation and to request assistance. The co-worker emailed Commissioner Hartwick a second time to inform him

---

[3] On August 30, 2011, Mr. Lamke filed a motion to dismiss the amended complaint. This motion will be addressed after the plaintiffs' response is filed.

[4] The amended complaint alleges the Dauphin County Domestic Relations records showed Ms. Reid's ex-husband did not reside on S. 17th Street. It also alleges the deputies did not have a warrant to enter the property without the consent of the owner. Deputy Vernouski attached the bench warrant as an exhibit to his motion to dismiss.

2

that Ms. Reid "decided to pursue further action with a legal professional to help her fight the battle." Ms. Reid learned that Mr. Hartwick called "defendant Marsico,"[5] and was expecting a return call from him. Ms. Reid also contacted Harrisburg Police Chief Charles Kellar. Chief Kellar promised to help her, but failed to follow-up.

On June 5, 2009, Ms. Bryant, the owner of the home, was charged with a violation of the dog laws for allowing Bandit to escape and attack Deputy Vernouski. Fred Lamke, a law enforcement officer and plaintiffs' next-door neighbor, was the affiant on the citation. Mr. Lamke had received orders from his supervisor, "Jane Doe," to file a citation against Ms. Bryant. At a June 2009 hearing, the charges against Ms. Bryant were dismissed because Mr. Lamke did not appear to testify.

The amended complaint alleges Deputy Vernouski violated plaintiffs' First, Fourth, and Fourteenth Amendment rights, Mr. Lamke and Jane Doe violated the plaintiffs' First Amendment rights, Mr. Lamke and Jane Doe are liable for malicious prosecution pursuant to the Fourth Amendment and Pennsylvania state law. The amended complaint also contains allegations of a conspiracy claim and an intentional infliction of emotional distress claim.

Deputy Vernouski filed a motion to dismiss the amended complaint, and plaintiffs filed a response.

---

[5] No defendant has the last name "Marsico," and "Marsico" is not mentioned elsewhere in the amended complaint. According to the website for Dauphin County, Pennsylvania, the Dauphin County District Attorney is Ed Marsico. See Dauphin County Pennsylvania, Publicly Elected Officials, http://www.dauphincounty.org/publicly-elected-officials/district-attorney/ (last visited Aug. 2, 2011).

II.     Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks Cnty. Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Se. Pa. Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal

4

evidence of" those elements. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

In Fowler, 578 F.3d at 210, the United States Court of Appeals for the Third Circuit provided a two-part test to determine whether a claim survives a motion to dismiss. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11 (quoting Iqbal, 129 S.Ct. at 1949). "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. (quoting Iqbal, 129 S.Ct. at 1950). The plaintiff must show "the allegations of his or her complaints are plausible." Fowler, 578 F.3d at 211 (quoting Phillips, 515 F.3d at 234-35). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Id. (quoting Iqbal, 129 S.Ct. at 1949). This "'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Fowler, 578 F.3d at 211 (quoting Iqbal, 129 S.Ct. at 1949).

III.   Discussion

    A.   Unreasonable Seizure

In their response to the motion to dismiss, plaintiffs discuss their unreasonable seizure claim under a section entitled: "Plaintiffs stated a substantive due process violation claim against [Deputy Vernouski]." It appears, however, plaintiffs argue both

their Fourth Amendment and their Fourteenth Amendment rights were violated.[6]

        1.      Fourth Amendment

Plaintiffs maintain Deputy Vernouski violated their Fourth Amendment right against unreasonable seizures. The amended complaint alleges Deputy Vernouski killed the Reid family's dog, even though the dog was not attacking the deputy and was not a danger to others.

In Brown v. Muhlenberg Township, 269 F.3d 205, 210 (3d Cir. 2001), the United States Court of Appeals for the Third Circuit held that a Fourth Amendment[7] seizure occurs when a law enforcement officer kills a person's dog. To be constitutional, the seizure must be reasonable. Id. Ms. Reid, Mr. Reid and J.B. have a possible claim as to whether Deputy Vernouski violated the Reid family's Fourth Amendment rights when he shot their dog, i.e., whether the shooting constituted an unreasonable seizure of their effects.[8]

---

[6] Plaintiffs state: "The claim against defendant [Vernouski] is clear under the authority of Brown v. Muhlenberg Twp, 269 F.3d 205 (3d Cir. 2001), in which the Third Circuit recognized that an owner of property, in that case a dog, had made out a claim for an unconstitutional seizure of their property in violation of the Fourth Amendment. . . . Plaintiffs assert that the latter conduct, and the absence of any and all justification, further supports a substantive due process violation under County of Sacramento v. Lewis, 523 U.S. 833 (1988), and its progeny." Brief in Opposition to Defendant's Motion to Dismiss the Amended Complaint Pursuant to Rule 12(b)(6) at 7-8, Bryant v. Vernouski, No. 11-263 (M.D. Pa. filed July 11, 2011).

[7] The Fourth Amendment, which is applicable to the states through the Fourteenth Amendment, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV.

[8] Deputy Vernouski maintains he has absolute immunity for any alleged Fourth Amendment violation. Deputy Vernouski, however, maintains the Fourth Amendment violation was based on an unlawful entry. It appears plaintiffs argue the shooting of their dog constituted the Fourth Amendment violation. To the extent plaintiffs attempt to argue the entry onto the property was a violation of their Fourth Amendment rights, the claim fails. "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is

Because the complaint does not allege Ms. Bryant owned the dog, Ms. Bryant cannot state a Fourth Amendment unreasonable seizure claim for the shooting of the Reid family dog.

        2.      Fourteenth Amendment

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)); accord County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998).

Here, the government behavior is governed by the Fourth Amendment protection against unreasonable seizures of "effects." Therefore, I find plaintiffs cannot state a claim under the Fourteenth Amendment substantive due process clause.

        B.      First Amendment Retaliation Claim

To state "a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v.

---

within." United States v. Veal, 453 F.3d 164, 167 (3d Cir. 2006) (quoting Payton v. New York, 445 U.S. 573, 603 (1980) (alteration in original). Officers must "have 'a reasonable belief the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry.'" Id. (quoting United States v. Gay, 240 F.3d 1222, 1226 (10th Cir.2001)). The deputies were acting pursuant to a bench warrant. The allegations in the amended complaint are not sufficient to state a claim the deputies did not reasonably believe that Ms. Reid's ex-husband resided at the residence and that he was in the residence at the time the officers arrived.

Independence Twp., 463 F.3d 285, 296 (3d. Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003)).

Ms. Bryant, Ms. Reid, J.B., and Mr. Reid allege their First Amendment rights were violated because criminal charges were filed against Ms. Bryant. Plaintiffs sought assistance from public officials and maintain the charges were brought against Ms. Bryant because they intended to pursue legal action.

The amended complaint fails to state a First Amendment retaliation claim against Deputy Vernouski. The amended complaint does not allege Deputy Vernouski was aware plaintiffs raised concerns following the incident,[9] and does not allege he knew a citation had been issued or that he was involved in the issuance of the citation. Plaintiffs' response maintains Deputy Vernouski violated plaintiffs' First Amendment rights because the actions protected his interests and he was the only witness for the Commonwealth's case. The amended complaint, however, does not allege Deputy Vernouski testified as a witness or planned to testify as a witness.

Plaintiffs' response maintains their Fourteenth Amendment right of access to the courts and their First Amendment right to petition for redress were violated. "The due process clause of the fourteenth amendment imposes upon state actors an obligation to refrain from preventing individuals from obtaining access to the civil courts." Brown v. Grabowski, 922 F.2d 1097, 1113 (3d Cir. 1990). To state a claim for violation of the First

---

[9] The complaint does not allege Ms. Bryant engaged in constitutionally protected conduct. Rather, it alleges Ms. Reid's friend emailed Commissioner Hartwick and Ms. Reid contacted the police department.

8

Amendment right to petition for redress, a plaintiff must "demonstrate that a defendant caused 'actual injury' . . . i.e., took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" Roberts v. Mentzer, 382 Fed. App'x 158, 162 (3d Cir. 2010) (quoting Beckerman v. Susquehanna Twp. Police & Admin., 254 Fed.Appx. 149, 153 (3d Cir.2007)).

Plaintiffs do not allege Deputy Vernouski was involved in the issuance of the citation or was aware of the citation. Moreover, even if he was involved, it is unclear how the issuance of a citation interfered with plaintiffs' right to access the court. Cases alleging denial of access to the courts generally relate to one of two categories. Christopher v. Harbury, 536 U.S. 403, 412-13 (2002). The first category of claims alleges "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." Id. at 413. Examples include cases in which the relief sought was access to a law library, a reader for an illiterate prisoner, or access to a lawyer. Id. The second category of claims alleges the defendants "have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief . . . ." Id. (internal citations omitted).[10]

The basis of plaintiffs' claim for denial of access to the court is that defendants issued a citation against Ms. Bryant because they knew plaintiffs were planning to take legal recourse. Even if defendants knew plaintiffs were going to take legal recourse and

---

[10] The Supreme Court has noted decisions addressing the right of access to the courts have been grounded in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, the Fourteenth Amendment Equal Protection Clause, and the Fourteenth Amendment Due Process Clause. Christopher, 536 U.S. at 415 n.12.

9

issued the citation to stop such action, this would not constitute denial of access to the courts.

I will grant Deputy Vernouski's motion to dismiss the plaintiffs' First Amendment retaliation claim and their denial of access to the court claim.

        C.        <u>Fourth Amendment Malicious Prosecution Claim</u>

To state § 1983 a malicious prosecution claim for violation of the Fourth Amendment[11] the plaintiff must allege:

> (1) the defendants initiated a criminal proceeding;
> (2) the criminal proceeding ended in the plaintiff's favor;
> (3) the proceeding was initiated without probable cause;
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

<u>DiBella v. Borough of Beachwood</u>, 407 F.3d 599, 601 (3d Cir. 2005) (quoting <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 521 (3d Cir.2003)). The issuance of a citation and a requirement that the plaintiff appear in court is not a Fourth Amendment seizure. <u>DiBella</u>, 407 F.3d at 603. If there is no pre-trial custody or other "pretrial, non-custodial restrictions," there is no Fourth Amendment seizure. <u>Id.</u>

In <u>DiBella v. Borough of Beachwood</u>, 407 F.3d 599, 603 (3d Cir. 2005), the Third Circuit found the plaintiffs were not deprived of liberty where they were issued a summons, "but were never arrested[,] . . . never posted bail[,] . . . were free to travel[,] and

---

[11] The Third Circuit requires a plaintiff to base "a viable Section 1983 action for malicious prosecution . . . on a federal constitutional violation rather than state common law." <u>DiBella v. Borough of Beachwood</u>, 407 F.3d 599, 602 (3d Cir. 2005) (quoting <u>Merkle v. Upper Dublin Sch. Dist.</u>, 211 F.3d 782, 792 (3d Cir. 2000)).

. . . did not have to report to Pretrial Services."  The Third Circuit contrasted the plaintiffs' situation to the plaintiff in Gallo v. City of Philadelphia, 161 F.3d 217, 224 (3d Cir. 1998), where the Third Circuit found the "restrictions amounted to a seizure."  DiBella, 407 F.3d at 602 (quoting Gallo, 161 F.3d at 222).   In Gallo, the plaintiff "was arrested for arson and posted a $10,000 bond[,] . . . was prohibited from traveling outside Pennsylvania and New Jersey, required to contact Pretrial Services on a weekly basis, and required to attend all court hearings including his trial and arraignment."  Id.

Ms. Bryant, Ms. Reid, Mr. Reid, and J.B. did not suffer a deprivation of liberty. There was no "seizure due to a legal proceeding."  Ms. Reid, Mr. Reid, and J.B had no citations issued against them and were not required to appear in court.  A citation was issued against Ms. Bryant and she was required to appear in court, but no additional restrictions impinged on her liberty.  Plaintiffs maintain there is the "additional element of restraining their freedom to seek legal recourse for the wrongs committed against them." This is not a restraint on their liberty as contemplated by the Fourth Amendment malicious prosecution law.  The amended complaint fails to allege Deputy Vernouski initiated criminal proceedings against plaintiffs.  Plaintiffs fail to state a Fourth Amendment malicious prosecution claim.

    D.    State Law Malicious Prosecution Claim

In Pennsylvania, to state a § 1983 malicious prosecution claim, the plaintiff must allege:  "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and

(4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 791 (3d Cir. 2000). The amended complaint does not allege Deputy Vernouski initiated criminal proceedings against any of the plaintiffs. I find plaintiffs fail to state a malicious prosecution claim under Pennsylvania state law.

    E.    Conspiracy

To the extent plaintiffs attempt to raise a conspiracy claim, the amended complaint fails to state a claim. "To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993), abrogated on other grounds by United Artists Theatre Circuit, Inc., 316 F.3d 392 (3d Cir. 2003) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970)).

There simply is no factual basis in the amended complaint showing any agreement or conspiracy. The amended complaint contains no allegations suggesting Deputy Vernouski reached an agreement with the other defendants. The complaint fails to even allege Deputy Vernouski knows Mr. Lamke or "Jane Doe." Deputy Vernouski's motion to dismiss the conspiracy claim will be granted.[12]

---

[12] The amended complaint does not allege there was a conspiracy to violate the plaintiff's Fourth Amendment right against unreasonable seizures. There is no allegation Deputy Vernouski or anyone else at the police department was aware there was a dog at the premises or had time to reach any kind of agreement regarding the seizure of the dog.

F. <u>Intentional Infliction of Emotional Distress</u>

Plaintiffs maintain the complaint stated an intentional infliction of emotional distress claim because the plaintiffs observed and/or heard the shooting and were present when the dog bled and when the veterinarian put him down. Plaintiffs rely on <u>Brown v. Muhlenberg</u>, 269 F.3d 205, 219 (3d Cir. 2001) to support their claim. The Third Circuit in <u>Brown</u> found the plaintiffs stated a claim "where it is shown that a police officer's attention was called to the severe emotional distress of the pet's owner, he hesitated before shooting, and he then attempted to fire five bullets into the pet within the owner's view and without justification. In such cases, the malicious behavior is directed to the owner as well as to the pet, with the potential for serious emotional injury to the owner being readily apparent." <u>Id.</u> To state an intentional infliction of emotional distress claim, the plaintiff must allege that the "acts against the dog were performed with the intention of inflicting severe emotional distress on the dog's owners." <u>Id.</u>

Although the complaint does not allege that Deputy Vernouski intended to inflict emotional distress on the dog's owner, the complaint contains enough allegations, at this stage, to deny the motion to dismiss the intentional infliction of emotional distress claim as to Ms. Reid and J.B. Discovery may yield additional evidence. The motion to dismiss the claim as to Ms. Bryant and Mr. Reid, who were not at the residence at the time of the incident, will be granted.

IV. <u>Conclusion</u>

I will grant Deputy Vernouski's motion to dismiss in part and deny it in part. I will

13

grant the motion to dismiss all claims raised by Ms. Bryant. For claims raised by Ms. Reid, Mr. Reid, and J.B., I will grant the motion to dismiss the Fourteenth and First Amendment claims, the Fourth Amendment malicious prosecution claim, the state law malicious prosecution claim, and the conspiracy claim, and Mr. Reid's intentional infliction of emotional distress claim. I will deny the motion to dismiss the Fourth Amendment unreasonable seizure claim and Ms. Reid's and J.B.'s intentional infliction of emotional distress claim.

An appropriate order follows.